**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **ELISHA LINVILLE,** | § | |
| **TDCJ No. 02055937** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **W-19-CV-677-ADA** |
| | § | |
| **BOBBY LUMPKIN,[1]  Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| | § | |
| **Respondent.** | § | |

## ORDER

Before the Court are Petitioner Elisha Linville's pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1), Respondent's Response (ECF No. 6), and Petitioner's Reply (ECF No. 9). Having reviewed the record and pleadings submitted by both parties, the Court concludes Petitioner's federal habeas corpus petition should be denied under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d).

## I.  Background

In November 2015, Petitioner was charged by indictment with one count of Aggravated Assault with a Deadly Weapon—Family Violence. The indictment included three felony enhancements. (ECF No. 7-50 at 3-4.) Petitioner waived his right to a jury

---

[1] The previous named respondent in this action was Lorie Davis. Bobby Lumpkin succeeded Ms. Davis as the Director of the Texas Department of Criminal Justice, Correctional Institutions Division and is automatically substituted as a party. FED. R. CIV. P. 25(d).

trial (ECF No. 7-18 at 32) and in February 2016, the trial court found Petitioner guilty and

sentenced him to fifty years imprisonment. *State v. Linville*, No. 39,010 (66th Dist. Ct.,

Hill Cnty., Tex. Feb. 16, 2016.) (ECF No. 7-50 at 10-11.) The following is a brief summary

of the factual allegations against Petitioner.

> In August 2015, [Petitioner] had been staying a few days with his uncle,
> Ben Johnson, in Johnson's travel trailer. When Johnson confronted
> [Petitioner] about several issues he had with [Petitioner]'s living habits, a
> brief altercation ensued, an altercation that ended abruptly when
> [Petitioner] struck Johnson with a garden rake, rendering him unconscious.
> The offshoot of this fracas was the indictment of [Petitioner] for aggravated
> assault with a deadly weapon. After a bench trial, the 66th Judicial District
> Court of Hill County found [Petitioner] guilty and, after punishment was
> enhanced for two prior felony convictions, sentenced him to fifty years'
> imprisonment.

*Linville v. State*, No. 06-16-00055-CR, 2016 WL 4394606 (Tex. App.—Texarkana Aug. 18,

2016, pet. ref'd). Petitioner's conviction was affirmed on appeal. *Id.* On September 17,

2017, the Texas Court of Criminal Appeals (TCCA) granted Petitioner's application to file

an out-of-time Petition for Discretionary Review (PDR). *Ex parte Linville*, No. WR-87,020-

01 (Tex. Crim. App. Sept. 17, 2017). (ECF No. 7-42.) On March 28, 2018, the TCCA

refused Petitioner's PDR. *Linville v. State*, No. PD-1147-17 (Tex. Crim. App. Mar. 28,

2018). Petitioner did not file a petition for a writ of certiorari to the United States Supreme

Court. (ECF No. 1 at 3.)

On April 11, 2019, Petitioner filed a pro se state habeas corpus application, listing

the following grounds of relief:

1. Actual innocence based on newly discovered evidence: testimony from Caroline
   Johnson, the complainant's wife, corroborating Petitioner's account of the incident,
   as well as testimony from Glen Adair and Bennie Baptisto.

2.  Trial counsel provided ineffective assistance of counsel when he failed to interview and subpoena Caroline Johnson, Glen Adair, and Bennie Baptisto;

3.  Violation of Petitioner's Sixth Amendment right to confrontation when the trial court admitted the CareFlite paramedics' report into evidence without calling an authenticating witness;

4.  Trial counsel provided ineffective assistance of counsel when he allowed the CareFlite paramedics' report to be admitted into evidence without authenticating witnesses;

5.  Trial counsel provided ineffective assistance when he failed to object to the introduction of the garden rake into evidence, despite it being in the complainant's possession for over 4.5 months after the incident;

6.  Ineffective assistance of counsel based on cumulative effect of trial counsel's errors;

7.  Prosecutorial misconduct based on the prosecutor's failure to disclose the State's intent to introduce the garden rake into evidence; and

8.  Ineffective assistance of appellate counsel when counsel failed to raise on appeal the issues with the introduction of the CareFlite report and the garden rake into evidence.

(ECF No. 7-50 at 15-39.) On June 12, 2019, the TCCA remanded Petitioner's writ for an evidentiary hearing. (ECF Nos. 7-44, 7-47.) On August 29, 2019, Petitioner's trial counsel—Mr. Robert P. Buckner—filed an affidavit, and on the same day, the state habeas court filed its Findings of Fact and Conclusions of Law recommending Petitioner's application be denied. (ECF No. 7-48 at 3-15.) On September 25, 2019, the TCCA denied Petitioner's application without written order on the findings of the trial court without hearing. *Ex parte Linville*, No. WR-87,020-02. (ECF No. 7-43 at 1.)

On November 26, 2011, Petitioner filed the instant pro se federal habeas petition, raising the following grounds of relief:

1. Petitioner was denied due process under the Fourteenth Amendment when the state failed to prove each element of the charged crime;

2. Petitioner did not stipulate to the introduction of the CareFlite paramedics report, which was admitted into evidence in violation of his Sixth Amendment right to confrontation;

3. Trial counsel provided ineffective assistance when he allowed the CareFlite report to be introduced into evidence;

4. Trial counsel provided ineffective assistance when he failed to object to the admission of the garden rake into evidence;

5. Trial counsel provided ineffective assistance when he failed to interview and subpoena witnesses in support of Petitioner's defense at trial; and

6. Petitioner is actually innocent based on newly discovered and newly available evidence.

(ECF No. 1.) On March 3, 2020, Respondent filed their response (ECF No. 6) to which Petitioner replied (ECF No. 9).

## **II. Standard of Review**

Petitioner's federal habeas petition is governed by the heightened standard of review provided by AEDPA. *See* 28 U.S.C. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This demanding standard stops just short of imposing a complete bar

on federal court re-litigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *Richter*, 562 U.S. at 102. A petitioner must show that the state court's decision was objectively unreasonable, not just incorrect, which is a "substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). As a result, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103. "'If this standard is difficult to meet—and it is—that is because it was meant to be.'" *Mejia v. Davis*, 906 F.3d 307, 314 (5th Cir. 2018) (quoting *Burt v. Titlow*, 571 U.S. 12, 20 (2013)).

5

## III. Analysis

### A. Sufficiency of the Evidence

In his first claim, Petitioner argues he was denied due process under the Fourteenth Amendment because the evidence presented at his criminal trial was legally insufficient to support his conviction. Specifically, Petitioner argues that the State failed to prove beyond a reasonable doubt that (1) Petitioner caused bodily injury to the complainant and (2) Petitioner used a deadly weapon.

Petitioner challenged the legal sufficiency of the evidence in his direct appeal, which the Texas Sixth Court of Appeals overruled as well as in his PDR before the TCCA, which was refused without written order. (ECF Nos. 7-9, 7-15.) *See Bautista v. McCotter*, 793 F.2d 109, 110 (5th Cir. 1986) (to exhaust state remedies, a Texas prisoner must present both the factual and legal substance of a claim in a procedurally proper manner to the Texas Court of Criminal Appeals in either a PDR or an application for writ of habeas corpus under Texas Code of Criminal Procedure art. 11.07.) As a result, the Sixth Court of Appeals has the last reasoned state judgment regarding Petitioner's legal-sufficiency claim. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.")

The standard for testing the sufficiency of evidence in a federal habeas review of a state court conviction is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The

evidence need not exclude every reasonable hypothesis of innocence or be completely inconsistent with every conclusion except guilt so long as a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt. *United States v. Leahy*, 82 F.3d 624, 633 (5th Cir. 1996). In addition, the AEDPA imposes a "twice-deferential standard" when a federal court reviews a state prisoner's claim challenging the sufficiency of the evidence. *Parker v. Matthews*, 567 U.S. 37, 43 (2012). As the Supreme Court explained:

> The opinion of the Court in *Jackson v. Virginia* . . . makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was "objectively unreasonable."

*Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (citations omitted).

After a lengthy recitation of the facts of the case, the Sixth Court of Appeals concluded there was sufficient evidence of bodily injury:

> Johnson [the complainant] testified that the blow from the rake was sufficiently strong to knock him down into the trailer, to render him unconscious, and to crack the handle of the rake. Although he was not certain how long he remained unconscious, he was clear that the blow from the rake rendered him unconscious. The trial court, as the trier of fact, was free to believe this testimony and to discredit [Petitioner]'s conflicting testimony. *Cain v. State*, 958 S.W.2d 404, 408-09 (Tex. Crim. App. 1997). In addition, the CareFlite records state that Johnson reported having lost consciousness, being dizzy, and suffering a headache for the period succeeding the event. Also, although Caroline [Johnson, the complainant's then-wife] did not mention any visible injuries in her 9-1-1 call, when asked if Johnson needed medical attention, she replied that although he did need that attention, he could not afford it. . . . Finally, although the CareFlite

records do not note any abnormalities, they also indicate that Johnson refused treatment and that an examination was not performed. When viewed in the light most favorable to the verdict, a rational fact-finder could find that the blow from [Petitioner] caused Johnson both pain and impairment of his brain function. Therefore, we find that there is sufficient evidence to support the finding of bodily injury. We overrule [Petitioner]'s first point of error.

*Linville*, 2016 WL 4394606 at *4. The court went on to conclude that there was sufficient evidence supporting the trial court's finding that a deadly weapon was used or exhibited:

> In this case, Johnson testified at trial that [Petitioner] swung the rake like a baseball bat, striking him with the handle portion slightly above and behind the right ear. He also testified that the blow was sufficiently severe to cause the fiberglass handle to crack, to knock him to the ground, and to render him unconscious. In addition, Johnson and the district attorney re-enacted the altercation at trial, demonstrating how [Petitioner] held and swung the rake. Also, [the sheriff] testified that Johnson told him on the day of the incident that when [Petitioner] swung the rake, Johnson saw the metal tines coming toward him. Finally, the rake was introduced into evidence so the trial court, as fact-finder, was able to examine the rake as part of its determination of whether the rake was capable of causing death or serious bodily injury. Although the State did not assert that the injury actually caused by the blow was a serious bodily injury, this does not mean that in the manner of its use, it was not capable of causing death or serious bodily injury. Rather, based on this evidence, a rational fact-finder could conclude that the rake, swung like a bat at Johnson's head, was capable of causing a protracted loss or impairment of an eye or ear, or even death, depending on where the blow struck. Therefore, we find that sufficient evidence showed that a deadly weapon was used or exhibited during the commission of the assault on Johnson. We overrule [Petitioner]'s second point of error.

*Id.* at *5.

Upon independent review of the record, the Court concludes that the evidence adduced at trial supports the conviction: the complainant's testimony, the CareFlite report, and the garden rake all supported the charge of aggravated assault with a deadly weapon. Although there was also conflicting testimony, the Sixth Court of Appeals

concluded a rational trier-of-fact could conclude that Johnson suffered a bodily injury and that Petitioner used the garden rake in a manner "capable of causing a protracted loss or impairment of an eye or ear, or even death, depending on where the blow struck." *Id.* Accordingly, the state habeas court's denial of this claim was not objectively unreasonable and this claim is denied.

## B. Confrontation Clause

In his second claim, Petitioner argues that although the CareFlite report was admitted into evidence as stipulated, Petitioner never waived the appearance, cross-examination, or confrontation of witnesses nor did he consent to stipulating the report as evidence. Respondent argues that this claim is barred from federal habeas review based on the invited-error doctrine.

Under the invited-error doctrine, a defendant is precluded from complaining "on appeal of alleged errors which he invited or induced, especially where the defendant may not have been prejudiced by the error." *Druery v. Thaler*, 647 F.3d 535, 545 (5th Cir. 2011) (quoting *United States v. Green,* 272 F.3d 748, 754 (5th Cir.2001)); *see also Woodall v. State*, 336 S.W.3d 634, 644 (Tex. Crim. App. 2011) ("the law of invited error provides that a party cannot take advantage of an error that it invited or caused, even if such error is fundamental"). The doctrine applies to federal habeas review as well. *Druery*, 647 F.3d at 546.

The Fifth Circuit has held that the invited-error doctrine functions as a state procedural bar, which can only be overcome by Petitioner showing "'cause for the default and actual prejudice as a result of the alleged violation of federal law' or 'that failure to

consider the claims will result in a fundamental miscarriage of justice.'" *Id.* (quoting *Neville v. Dretke*, 423 F.3d 474, 480 (5th Cir. 2005)).

At trial, it was Petitioner's counsel who offered the CareFlite report into evidence:

MR. BUCKNER: Your Honor, at this time I would offer into evidence – well, you – we previously discussed this CareFlite report that's under actually a medical records affidavit and should be authenticating in that regard except that we don't have a sponsoring witness here, but [the prosecutor] has agreed that we could – excuse me – the report is relevant, and we would ask that it be made part of the evidence in this trial.

PROSECUTOR: Yes, Your Honor. I have no objection. We previously agreed that it wouldn't be necessary for him to call any witness to sponsor that and bring it in.

(ECF No. 7-21 at 94-95.) In Mr. Buckner's affidavit submitted to the state habeas court, he attested as follows:

After thorough discussions with [Petitioner] concerning the [CareFlite] report, it was determined that the defense wanted the report to be introduced into evidence because we believed it corroborated the fact that there were no serious injuries to Mr. Johnson. In fact, there is very little in the report that supports the conclusion that there was any injury to Mr. Johnson. Typically, such a report would be submitted by the State to prove an assault had occurred, but in this case the defense wanted to introduce the report to support its theory of the case. Affiant did not want the paramedics to testify because they might have elaborated on or speculated on the nature of the injuries they saw. The report as written was exactly what the defense wanted and there was no reason to add to or take away from it. The District Attorney agreed to stipulate that the report could be introduced without an authenticating witness. Defendant was specifically admonished concerning this stipulation by the Court on January 8, 2016. The defense introduced the report, and the lack of support in the report for establishing that a serious injury to the complaining witness had occurred became a critical part of the defense case.

(ECF No. 7-48 at 8-9.)

In Petitioner's federal petition and his reply to Respondent's Response, he alleges that he never stipulated to introducing the CareFlite report into evidence, but does not offer any evidence for this other than his conclusory allegations. See *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) ("mere conclusory allegations do not raise a constitutional issue in a habeas proceeding"). "Absent evidence in the record," this Court cannot "consider a habeas petitioner's bald assertions on a critical issue in his pro se petition . . . , unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018) (citing *Ross*, 694 F.2d at 1011). Further, in neither his petition or his reply does Petitioner attempt to show cause and prejudice to overcome the procedural bar, or argue that it would be a fundamental miscarriage of justice for the Court to bar review of this claim. As a result, this claim is barred from federal habeas review under the invited-error doctrine.

## C. Ineffective Assistance of Counsel (claims 3-5)

Petitioner's next three claims are based on allegations that his trial counsel provided constitutionally deficient assistance of counsel. The Sixth Amendment to the United States Constitution guarantees citizens the assistance of counsel in defending against criminal prosecutions. U.S. CONST. amend VI. Sixth Amendment claims based on ineffective assistance of counsel are reviewed under the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner cannot establish a violation of his Sixth Amendment right to counsel unless he demonstrates (1) counsel's performance was deficient and (2) this deficiency prejudiced

a petitioner's defense. *Id.* at 687-88, 690. The Supreme Court has emphasized that "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

When determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct and a petitioner must show that counsel's performance fell beyond the bounds of prevailing objective professional standards. *Strickland,* 466 U.S. at 687-89. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Burt*, 571 U.S. at 22 (quoting *Strickland*, 466 U.S. at 690). To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Under this prong, the "likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112 (citing *Strickland*, 466 U.S. at 693). A habeas petitioner has the burden of proving both prongs of the *Strickland* test. *Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

Ineffective assistance of counsel claims are considered mixed questions of law and fact and are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). When the state court has adjudicated the claims on the merits, a federal court must review a petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *See Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (citing *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)). In such cases, the "pivotal question" is not "whether defense

counsel's performance fell below *Strickland*'s standard," but whether "the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S at 101.

### 1. Introduction of CareFlite Report

In Petitioner's third claim, he argues that Mr. Buckner provided ineffective assistance when he offered the CareFlite report into evidence. Petitioner argues again that he did not stipulate to the admission of this evidence, and that had Mr. Buckner subpoenaed either the CareFlite paramedics or Caroline Johnson, these witnesses would have refuted the testimony of the complainant. Petitioner claims the introduction of this report violated his Sixth Amendment right to confrontation.

As noted above, Mr. Buckner responded to this claim in his state habeas affidavit by attesting that he had "thorough discussions" with Petitioner regarding the CareFlite report and that they decided it corroborated their defense that the complainant had no serious injuries. Mr. Buckner also stated that he specifically did not want a paramedic to testify in support of the report "because they might have elaborated on or speculated on the nature of the injuries they saw." (ECF No. 7-48 at 9.)

Upon review of Mr. Buckner's affidavit, the state habeas court found the following:

3. Trial Counsel has a sterling reputation with the Court and the community.

4. Trial Counsel's response adequately demonstrates that . . . (c) the [CareFlite] report was allowed into evidence because the report did tend to negate the seriousness of the victim's purported injuries . . . .

5. This Court adopts Trial Counsel's conclusions as if set out herein, verbatim.

6. The Trial Court, recalling on its own recollection, finds that Trial Counsel's performance was not deficient.

13

(*Id.* at 3.)

This Court's review of Petitioner's claim is guided by the AEDPA, under which Petitioner must show that the state habeas court's determination was an unreasonable application of *Strickland*. The Court concludes it was not. The habeas court—which was the same as the trial court—credited Mr. Buckner's statement that he and Petitioner together decided to stipulate to the admission of the CareFlite report and that the report tended to negate the seriousness of the complainant's injuries. Trial counsel has broad discretion when it comes to deciding how best to proceed strategically. *See Ward v. Stephens*, 777 F.3d 250, 264 (5th Cir. 2015) (the Supreme Court has emphasized counsel has "wide latitude in deciding how best to represent a client"); *see also Mays v. Stephens*, 757 F.3d 211, 214 (5th Cir. 2014) (presumption of correctness afforded to state habeas court's determination of a factual issue is especially strong when state habeas court and trial court are one in the same) (citations omitted). This Court is mindful that "*Strickland* does not allow second guessing of trial strategy and must be applied with keen awareness that this is an after-the-fact inquiry." *Granados v. Quarterman*, 455 F.3d 529, 534 (5th Cir. 2006). In other words, simply because counsel's strategy was not successful does not mean counsel's performance was deficient. *Avila v. Quarterman*, 560 F.3d 299, 314 (5th Cir. 2009).

Even if Mr. Buckner's decision to admit the report into evidence without an authenticating witness violated Petitioner's Sixth Amendment right to confrontation, Petitioner has nonetheless failed to show prejudice. To show prejudice, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Further, the "likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112. *See also Pondexter v. Quarterman*, 537 F.3d 511, 520 (5th Cir. 2008) (finding an ineffective-assistance claim may be rejected for want of either deficient performance or prejudice, and thus the absence of either prong of the *Strickland* analysis is dispositive).

The state habeas court found that the admission of the CareFlite report was in Petitioner's favor as it undermined the seriousness of the complainant's injuries. Further, Mr. Buckner stated that he chose not to call the paramedics because they might have speculated and elaborated on the extent of the complainant's injuries that day. Petitioner has not shown that, had Mr. Buckner called a witness to authenticate the CareFlite report, there is a reasonable probability that the outcome of the trial would have been different. As a result, this Court concludes that the state habeas court's application of *Strickland* was not unreasonable and this claim is denied.

### 2. Failure to Object to Admission of Garden Rake

In Petitioner's fourth claim, he argues that his trial counsel provided ineffective assistance when he failed to object to the admission of the garden rake based on a violation of chain-of-custody. Specifically, Petitioner argues that the garden rake remained in the complainant's custody for 4.5 months until it was retrieved by the police one day prior to trial, at which time it had a large crack in it.

Mr. Buckner attested as follows regarding the admission of the garden rake:

15

The indictment alleged that the defendant struck the complainant with a garden rake. Prior to trial, defense counsel had been provided with a photograph of the rake, but was told that the rake had not been seized as evidence by the Sheriff's Department. . . .

Nevertheless, once the rake was brought to the courtroom. It became apparent to the defense that it was more helpful to the defendant than the photograph. The rake consisted of a fiberglass handle attached to metal forks, and was not a very heavy object. The defense argued that the rake did not appear to be capable of use as a deadly weapon, particularly by striking Mr. Johnson with the handle-end of the rake rather than the metal forks.

When Mr. Johnson testified, . . . that he was struck with the handle end of the rake as opposed to the metal forks, it became apparent to the defense that this could be used to its advantage. The affiant argued that the fiberglass handle was not substantial and not capable of being used as a deadly weapon; particularly since there was no evidence of serious injury and no expert testimony that the rake was capable of inflicting serious bodily injury.

However, it was not lost on trial counsel that the rake had been in the possession of Mr. Johnson and not the State since the date of the incident and that Mr. Johnson had the opportunity to alter the condition of the rake after the incident. (The rake handle was splintered on the end and Mr. Johnson said the splintering occurred when he was struck.) Affiant argued these points to the Court during cross-examination of Mr. Johnson. Trial counsel's cross-examination of Mr. Johnson comprises approximately 39 pages of the trial transcript.

As it turned out, the rake became an important part of the defense strategy. It was beneficial to the defense that the rake was introduced into evidence and visible to the Court as it provided the defense the opportunity to argue that the rake handle was not sufficiently sturdy enough to be used as a deadly weapon. The photograph of the rake did not reveal its lightweight nature, and undoubtedly Mr. Johnson's description of it would have been less helpful. Just like the introduction of the CareFlite report, the introduction into evidence of the rake was not harmful to the defense, but was, in fact, very helpful.

(ECF No. 7-48 at 9-10.) The state habeas court credited Mr. Buckner's affidavit, and

concluded that "Trial Counsel's response adequately demonstrates . . . (b) that the

16

introduction of certain evidence, including the garden rake, was trial strategy, such strategy was valid because as the [trier] of fact, the Trial Court acknowledges that the actual rake was less imposing than it appears in the photograph, see also Trial Counsel's affidavit; . . . ." (*Id.* at 3.)

As noted above, trial counsel has wide latitude in determining trial strategy. *See Ward*, 777 F.3d at 264. In fact, "[d]efense counsel's 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengable.'" *Mejia*, 906 F.3d at 316 (quoting *Rhoades v. Davis*, 852 F.3d 422, 434 (5th Cir. 2017)). In his affidavit, Mr. Buckner stated he did not object to the admission of the garden rake because, in person, the garden rake looked lightweight, insubstantial, and not capable of inflicting serious injury, which counsel believed was "very helpful" to the defense. The trial court agreed that the garden rake was "less imposing" in person and concluded that the admission of the rake was valid trial strategy.

Again, simply because trial counsels' strategy was not successful does not mean their performance was deficient. *Avila*, 560 F.3d at 314. Further, the state habeas court concluded that "[a]s the finder of fact at the original trial of this matter, even if everything [Petitioner] complains of had been done differently, it would not have made a difference to the Trial Court." Petitioner has failed to show that the state habeas court unreasonably applied *Strickland* when it concluded Mr. Buckner's trial strategy was neither deficient nor prejudicial. Accordingly, this claim is denied.

17

3. *Failure to Investigate, Interview, and Subpoena Witnesses*

In Petitioner's fifth claim, he argues that his trial counsel provided ineffective assistance when counsel failed to investigate the case and then subpoena three witnesses: Caroline Johnson, Glen Adair, and Bernie Baptisto. Petitioner alleges that, had these witnesses testified at his trial, the complainant's version of events would have been discredited, and Petitioner would not have been convicted.

Mr. Buckner addressed this claim in his state habeas affidavit:

Caroline Johnson reported the incident to the 911 operator at approximately 10:21 a.m. The recording of the 911 call was introduced by the defense and played in Court. Caroline Johnson was on the State's list of witnesses but she did not appear. At no time prior to trial was she considered to be a favorable defense witness. She had inspected Ben Johnson's head and reported an injury and alleged theft to the 911 operator. That was the first time the alleged assault had been reported.

. . . .

As stated earlier, Caroline Johnson was considered a State's witness who would not be helpful to the defendant at trial. She was the person who reported the injury and theft to the [Sheriff's] office and CareFlite. It is not clear why the State did not call her, but prior to trial affiant expected her to testify for the State and elaborate on Ben Johnson's injuries. The defense believed it to be fortuitous that she was not called and used that lack of evidence in argument to the Court that the testimony of the complaining witness was uncorroborated.

Glen Adair-The name "Glen Adair" does not appear in affiant's notes until after the trial. The defendant mentions Mr. Adair in his testimony but affiant had not heard that name previously. The only witness [Petitioner] specifically requested trial counsel to subpoena was Eddie Jeannette (Jeannie) Richardson.

. . . .

New evidence was discovered after the trial that the defense believed was relevant to certain aspects of Ben Johnson's testimony. . . . Trial counsel

informed the Court that Mr. Adair would be subpoenaed to testify if the Court reopened the case. The Court was also informed that the defense would subpoena Caroline Johnson as well (even though affiant was unable to contact her previously) to presumably confirm Mr. Adair's statement if the Court would reopen the testimony. However, neither witness was subpoenaed because the Court did not reopen the testimony.

Bennie Baptisto-Affiant first heard the name "Bennie Baptisto" when Ben Johnson testified he worked for him all day and was paid on August 17, 2015, the day before the incident (Tr. Vol. 3, P. 56). Trial counsel had been informed by the defendant that Mr. Johnson's neighbors were named Bennie and Maria. . . . Maria was interviewed by the investigator for trial counsel, because [Petitioner] had reported that she may have seen Mr. Johnson give $40.00 to [Petitioner] the day before the alleged incident. Maria, however, informed the investigator that she saw nothing, and was a friend of Mr. Johnson and did not want to get involved. The only helpful information she supplied was that Mr. Johnson worked for her and her husband Bennie from time to time.

. . . .

These three potential witnesses were relevant only to the issues of whether Ben Johnson had in his possession the $80.00 he testified he had on the date of the incident, and whether Ben Johnson may have owed any money to Caroline Johnson. Their testimony would have been offered in an attempt to discredit Mr. Johnson's credibility in spite of the fact that the Court had already determined him to be credible. These witnesses were not witnesses to the alleged offense nor could they corroborate that it occurred (other than possibly a description of Ben Johnson's injuries by Caroline Johnson). These were not witnesses the defense contemplated calling before trial, but were in fact new witnesses to present new evidence to address issues raised by the testimony at trial.

(ECF No. 7-48 at 11-14.) The state habeas court recommended denying this claim, concluding that it would not have been "favorable to [Petitioner] if the witnesses he complained of not being subpoenaed to testify had been called." (*Id.* at 3.)

*Strickland* requires counsel to undertake a reasonable investigation. 466 U.S. at 690-91; *Charles v. Stephens*, 736 F.3d 380, 389 (5th Cir. 2013). Counsel must, at

minimum, interview potential witnesses and make an independent investigation of the facts and circumstances of the case. *Kately v. Cain*, 704 F.3d 356, 361 (5th Cir. 2013). In assessing the reasonableness of counsel's investigation, a heavy measure of deference is applied to counsel's judgments and is weighed in light of the defendant's own statements and actions. *Strickland*, 466 U.S. at 691. To prevail on an ineffective-assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate the witness was available to testify, delineate the content of the witness's proposed testimony, and show the testimony would have been favorable to the defense. *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009).

Here, trial counsel stated he believed Caroline Johnson would not be a favorable defense witness because she was listed as a State witnesses and she was the person who inspected the complainant's injuries and then called 9-1-1. Mr. Buckner also attested he had not heard of the other two witnesses until during and after the trial, at which point his motion to reopen testimony and subpoena them as witnesses was denied by the trial court. Finally, the state habeas court stated that, as the trier-of-fact, testimony from these witnesses would not have been favorable to the defense. Petitioner has failed to show that the state habeas court unreasonably applied *Strickland* in denying this claim. Accordingly, this claim is denied.

## D. Actual Innocence

In Petitioner's final claim, he argues he is actually innocent of the crime based on newly discovered evidence. Specifically, Petitioner points to a number of affidavits he included with his state habeas corpus application, including one from Caroline Johnson

stating the complainant "seemed like he was fine"; one from the complainant's sister corroborating Ms. Johnson's statement; one from Chris Mantooth who states that the complainant told him Petitioner had not committed the crime; and finally one from the Petitioner's sister, wherein she states the complainant told her he made false allegations against Petitioner because the complainant was jealous about the relationship between Petitioner and Caroline Johnson.

Freestanding claims of actual innocence based on newly discovered evidence do not provide a basis for federal habeas relief. *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000) (citing *Herrera v. Collins*, 506 U.S. 390, 417 (1993)). "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact." *Herrera*, 506 U.S. at 399. Although the *Herrera* court left open the question of whether, in a capital case, "a truly persuasive demonstration of 'actual innocence' made after trial would . . . warrant habeas relief if there were no state avenue open to process such a claim," 506 U.S. at 417, the Fifth Circuit has consistently rejected this theory. *See Cantu v. Thaler*, 632 F.3d 157, 167 (5th Cir. 2011); *In re Swearingen*, 556 F.3d 344, 348 (5th Cir. 2009); *Graves v. Cockrell*, 351 F.3d 143, 151 (5th Cir. 2003) (collecting cases).

Accordingly, Petitioner's freestanding claim of actual innocence is not cognizable and is denied.

### IV. Certificate of Appealability

A petitioner may not appeal a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A).

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the district court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to the applicant. *See Miller-El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In cases where a district court rejects a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a district court rejects a habeas petition on procedural grounds without reaching the constitutional claims, "a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the dismissal or denial of the Petitioner's § 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El*, 537 U.S. at 327 (citing *Slack*, 529 U.S. at 484). Accordingly, the Court will not issue a certificate of appealability.

It is therefore **ORDERED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DENIED**; and

It is **FURTHER ORDERED** that no certificate of appealability shall issue in this case.

**SIGNED** on April 15, 2021

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE